D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

DIANA ROSE,

                      Plaintiff,

        -against-

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
-----------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**13-CV-7329 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Diana Rose brings this pro se action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the decision of the Social Security Administration (the "SSA") that she was

not without fault in accepting an overpayment of Title II Disability Insurance Benefits ("DIB").

(See Compl. (Dkt. 1) at 1-2.) The SSA found that Plaintiff was ineligible for a waiver of

overpayment in the amount of $36,351.70 and that the overpayment occurred when Plaintiff

earned income exceeding the Substantial Gainful Activity allowance. (Administrative R. ("R.")

(Dkt. 8) at 97.) Plaintiff argues that the decisions by the Administrative Law Judge (the "ALJ")

and the Appeals Council were not supported by substantial evidence and that the ALJ and

Appeals Council applied the incorrect legal standards. (Compl. at 2.) Defendant, the

Commissioner of Social Security (the "Commissioner"), has filed a motion for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure 12(c), and Plaintiff has filed an affidavit

opposing the Motion. (See Mem. of Law in Supp. of Def.'s Mot. ("Def.'s Mem.") (Dkt. 16);

Pl.'s Aff. in Opp'n to Def.'s Mot. ("Pl.'s Aff.") (Dkt. 17); Def.'s Mem. in Further Supp. of Mot.

("Def.'s Supp. Mem.") (Dkt. 18).) For the reasons set forth below, Defendant's Motion is

DENIED, and this case is REMANDED to the Commissioner for further proceedings.

## I.     BACKGROUND

### A.     Disability Insurance Benefits

A claimant is entitled to DIB if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will not be found disabled "if [she is] working and the work [she is] doing is substantial gainful activity . . . regardless of [her] medical condition or [her] age, education, and work experience." 20 C.F.R. § 404.1520(b). Substantial Gainful Activity ("SGA") is work activity that "involves doing significant physical or mental activities" for pay or profit. Id. § 404.1572(a)-(b). In order for work activity to qualify as SGA, the individual must receive payment or profit greater than or equal to a set amount per month, with monthly minimums set annually by the SSA. See id. § 404.1574. The monthly minimums at issue in this case are: $740 for 2001, $800 for 2003, $810 for 2004, and $830 for 2005. (R. at 123-25.)

A DIB claimant may be granted a nine-month Trial Work Period ("TWP"), of either consecutive or non-consecutive months, during which she may test her ability to work without affecting her DIB eligibility. See 20 C.F.R. § 404.1592. The first time that a claimant engages in SGA after the end of her TWP, the SSA will find that her disability has ceased. See id. § 404.1592a(a)(1). However, immediately after the TWP has concluded, the claimant may be given a 36-month reentitlement period.[1] See id. § 404.1592a. During the reentitlement period, the SSA will pay DIB for any month where the claimant could not perform SGA. See id. The reentitlement period ends the earlier of "the month before the first month in which [the

---

[1] Separate from the reentitlement period, the SSA will continue to pay the claimant DIB for three months following the revocation of benefits after a TWP. See 20 C.F.R. § 404.1592a(a)(2)(i).

claimant's] impairment no longer exists or is not medically disabling" or "the last day of the 36th month following the end of [the claimant's] trial work period." Id. § 404.1592a(b).

### B. Plaintiff's Disability Insurance Benefits Overpayments

Plaintiff applied for DIB on May 12, 1998, as a result of a July 4, 1997, car accident. (R. at 105, 130.) The SSA approved her disability claim in August 1998 and awarded her benefits from January 1998 onward. (See id. at 89.) Following the 1997 car accident, Plaintiff did not work again until February 2000. (See id. at 123.) In February 2000, Plaintiff began working for Protocol Connection and continued working there through September 2001. (See id. at 123-24.) From October 2001 through September 2003, Plaintiff remained unemployed. (See id. at 124.) In October and November 2003, Plaintiff worked briefly for Williams-Sonoma. (See id.) From November 2003 through August 2004, Plaintiff worked for AT&T. (See id.) Plaintiff also received income from AT&T from January 2005 through July 2005.[2] (See id. at 125.)

The SSA granted Plaintiff a nine-month TWP covering February 2000 through October 2000. (Id. at 28.) However, Plaintiff's employment continued from November 2000 through September 2001. (Id. at 123-24.) After the conclusion of Plaintiff's TWP, she earned $1,809.77 per month from November 2000 through December 2000 and $1,258.75 per month from January 2001 through September 2001. (Id.) The Record states that from February 2001 through September 2001, Plaintiff exceeded the allowable SGA monthly income of $740.00, resulting in an overpayment of $8,115.00.[3] (See id. at 89, 124.) Plaintiff then was unemployed from October 2001 through September 2003, and the SSA did not find she was overpaid again

---

[2] Plaintiff disputes whether these were 2005 wages or retroactive pay for work in 2004. (See R. at 113.)

[3] Plaintiff received DIB for November 2000 through January 2001; however, as explained above, these were not overpayments because she was entitled to these benefits pursuant to 20 C.F.R. § 404.1592a(a)(2)(i). (See supra n.1.)

due to SGA until December 2003.[4] (See id. at 90.) The SSA found that Plaintiff had been overpaid $27,331.20 from December 2003 through September 2005. (See id.) Additionally, the SSA found that Plaintiff had been overpaid $999.00 for October 2006. (See id.) Together, these overpayments amount to $36,445.20. (See id. at 89-90.) After deducting an underpayment of $93.50 for 2007, the SSA found that Plaintiff had been overpaid $36,351.70 in total.[5] (See id.)

On September 7, 2006, after reviewing Plaintiff's earnings, the SSA retroactively determined that her disability had ceased in November 2000. (Id. at 27-28.) In a September 7, 2006, notice, the SSA informed Plaintiff that her 36-month reentitlement period began on November 2000; thus, her DIB were retroactively terminated, effective November 2003. (Id.) On October 5, 2006, Plaintiff submitted a request for reconsideration, stating that she had not worked since August 2004 and that she still was disabled. (See id. at 34.) In an expedited reinstatement, Plaintiff was found to have a continuing disability, and the SSA retroactively reinstated her DIB effective October 2005.[6] (See id. at 30, 90.)

On February 28, 2008, Plaintiff filed a request for reconsideration of the SSA's overpayment decision, claiming that the overpayment "was not [her] fault" and that "paying it back [would be] unfair." (Id. at 37, 114-17.) On August 15, 2008, the SSA denied Plaintiff's claim for a waiver of overpayment (id. at 50), finding that she was "at fault" in causing the overpayment and that "recovery would not defeat the purpose of Title II" (id.

---

[4] While Plaintiff worked in October and November 2003, her October 2003 income did not rise above SGA levels, and her expenses lowered her November 2003 income below SGA levels, resulting in no overpayment for those months. (See R. at 39, 124.)

[5] The $36,351.70 overpayment amount is contained in an undated document and is contradicted in the Record, as explained below. (See infra Part III.A.3.)

[6] It is not clear why the SSA chose October 2005 as the date for Plaintiff's disability reinstatement.

at 108-09). On March 1, 2010, Plaintiff requested a hearing before an ALJ, claiming that the SSA personnel "advised [her] and gave [her] misinformation," and that the SSA actually granted her two TWPs. (Id. at 59.) The SSA approved Plaintiff's request, and hearings were held before ALJ Seymour Fier on October 18, 2011, and November 21, 2011. (See id. at 344-87.)

### C.    ALJ Hearings

Plaintiff appeared at the ALJ hearings pro se. (Id. at 346, 382.) At the October 18, 2011, hearing, Plaintiff presented four main arguments. First, she maintained that she had been misinformed by SSA officials when they advised her that her work would not affect her DIB. (See id. at 359.) Second, she claimed that she kept the SSA informed about her work. (See id. at 349.) Third, she argued that the overpayment timeframe was incorrect, because she claimed that she had been awarded two TWPs. (See id. at 357.) Fourth, she asserted that the $36,351.70 overpayment amount was incorrect, claiming that the SSA had lost parts of her file showing expenses for multiple months that, if considered, would have lowered her income below SGA levels. (See id. at 346, 351.) Plaintiff maintained that the correct overpayment amount was $29,760.80, including an alleged adjustment by SSA representative Michael Heverin to the originally charged overpayment, and accounting for prior repayments Plaintiff claimed to have made to the SSA. (See id. at 355-56.)

At the November 21, 2011, hearing, Plaintiff was suffering from vocal nodules and was unable to speak, so she attempted to write notes to be read into the Record by the ALJ. (See id. at 68, 81-86, 382.) However, the ALJ appeared to have difficulty understanding the notes, and he refused to accept any additional notes after Plaintiff's third note. (See id. at 81-86, 386.) Plaintiff's final note read: "This wasn't fair." (Id. at 86.)

On November 25, 2011, the ALJ found that Plaintiff had worked

in 2000, 2001, 2003, 2004, and posted earnings for 2005, and that she had been "overpaid

benefits in the amount of $36,351.70 between February 2001 and September 2005." (Id.

at 97-98.) In his decision, the ALJ did not cite any documents supporting the $36,351.70

amount; nor did he explain whether that figure accounted for Plaintiff's alleged adjustments or

partial repayments. (See id. at 97.) Additionally, the ALJ found that Plaintiff was at fault in

causing the overpayment, because "she knew or she could have been expected to know [that the

payments] were incorrect." (Id.) When making his decision, the ALJ stated that he considered

the notices that Plaintiff received from the SSA regarding the importance of updating the agency

about all work endeavors and the effect that work status has on DIB. (See id.)

### D. Appeal

On January 13, 2012, Plaintiff requested an appeal of the ALJ's decision. (Id. at 99.) On

August 28, 2013, the Appeals Council notified Plaintiff that it would review the case and told her

that if she had additional information, she was required to "send it . . . within 30 days of the date

of this letter." (Id. at 9-10.) This 30-day period expired on September 26, 2013. (See id.

at 9-10.) In her Complaint, Plaintiff alleges that she in fact sent the Appeals Council additional

supporting paperwork, and she includes a certified mail receipt for materials sent

September 26, 2013, and were received September 30, 2013. (Compl. at 4, 14.) However, in its

ultimate decision, the Appeals Council stated that "no comments or additional evidence have

been received," and it did not mention that it had received any materials after the deadline. (R.

at 13.)

In reviewing the ALJ's decision, the Appeals Council considered Plaintiff's individual

characteristics regarding her ability to understand her reporting responsibilities. (See id. at 9.)

6

The Appeals Council found that the overpayment period should be changed to cover January 1998 through December 2006, but it otherwise adopted all other findings of the ALJ. (Id.) The Appeals Council based its decision on the multiple DIB renewal notices sent by the SSA, including on June 2002 and February 2006, determining that these documents put Plaintiff on notice about the requirements accompanying SGA, TWPs, and reentitlement periods. (See id.) The Appeals Council finalized the decision on October 19, 2013. (Id. at 5.)

### E.    Evidence Submitted to the District Court After the Appeals Council Decision

In Plaintiff's Affidavit, she attached eight documents which she claims are relevant, were presented to the ALJ at the hearing, and were not included in the Record. (Pl.'s Aff. at 4, 16-23.) The documents include: (1) an August 31, 1998, letter from the SSA notifying Plaintiff that she had been found disabled and advising her how the SSA would handle retroactive payments; (2) a 2005 W-2 form displaying year-to-date earnings for "Diana R"; (3) a March 28, 2002, letter from the SSA to Plaintiff regarding Plaintiff's second TWP; (4) an October 31, 2002, letter from the SSA notifying Plaintiff of an amount increase to her DIB payments; (5) a November 7, 2005, letter from the SSA notifying Plaintiff of an amount increase to her DIB payments; (6) a May 30, 2007, letter from the SSA to Congressman Gary Ackerman explaining Plaintiff's overpayment; (7) a May 15, 2002, letter from the SSA notifying Plaintiff about the "Ticket to Work and Self-Sufficiency" program; and (8) an April 3, 2012, letter from the SSA to Plaintiff outlining the deductions the SSA would be making from Plaintiff's DIB in order to recoup the overpayment. (See id. at 16-23.)

## II.     LEGAL STANDARD

### A.     Standard of Review

Under Federal Rule of Civil Procedure 12(c), "a movant is entitled to judgment on the pleadings only if the movant establishes 'that no material issue of fact remains to be resolved and that [she] is entitled to judgment as a matter of law.'" Guzman v. Astrue, No. 09-CV-3928 (PKC), 2011 WL 666194, at *6 (S.D.N.Y. Feb. 4, 2011) (quoting Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990)).

Due to Plaintiff's pro se status, the court holds her pleadings to "less stringent standards than formal pleadings drafted by lawyers." Garcia v. Armor Health Care Inc., No. 16-CV-1996 (JMA) (AYS), 2016 WL 3647870, at *2 (E.D.N.Y. July 1, 2016) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). The court will liberally construe Plaintiff's pleadings "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

"[T]he Court shall also draw upon caselaw which interprets the recovery of SSI overpayments under legislative and regulatory provisions which are not inconsistent with Title II of the [Social Security] Act." Posnack v. Sec'y of Health & Human Servs., 631 F. Supp. 1012, 1014 (E.D.N.Y. 1986) (citing Harrison v. Heckler, 746 F.2d 480, 482 (9th Cir. 1984)). Any "final decision" of the Commissioner is subject to judicial review. 42 U.S.C. § 405(g). A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. "A remand by the court for further proceedings is appropriate when the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have

correctly applied the . . . regulations." Ming v. Astrue, No. 07-CV-4567 (DLI) (SMG), 2009 WL 2495947, at *3 (E.D.N.Y. Aug. 13, 2009) (internal quotation marks omitted).

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." Skrodzki v. Comm'r of Soc. Sec., No. 11-CV-5173 (MKB), 2013 WL 55800, at *3 (E.D.N.Y. Jan. 3, 2013) (citing Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004)). The court first considers whether the ALJ and Appeals Council applied the correct legal standards. Litvin v. Astrue, No. 09-CV-8649 (JSR) (HBP), 2011 WL 4834138, at *8 (S.D.N.Y. Oct. 12, 2011); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999).

Under 20 C.F.R. § 404.900(b), the SSA conducts "the administrative review process in an informal, non-adversarial manner." Because of this non-adversarial review, it is the ALJ's duty to develop the record. Sims v. Apfel, 530 U.S. 103, 104 (2000); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). When an ALJ does not "fully develop[] the factual record, the ALJ commit[s] legal error." Rosa v. Callahan, 168 F.3d 72, 80 (2d Cir. 1999). A pro se appearance creates a duty for the ALJ "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." Yankus v. Astrue, No. 07-CV-0316 (JFB), 2008 WL 4190870, at *6 (E.D.N.Y. Sept. 10, 2008) (citing Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980)). Therefore, especially in a pro se case, remand for further administrative proceedings is appropriate "where there are gaps in the administrative record," because it is the court's duty to determine whether the "ALJ adequately protected the rights of a pro se litigant by ensuring that all of the relevant facts are sufficiently developed and considered." Rosa, 168 F.3d at 82 (alterations omitted); see also Howard v. Astrue, No. 07-CV-1558 (NG), 2007 WL 4326788, at *4 (E.D.N.Y. Dec. 7, 2007).

After reviewing for legal error, the court then decides whether the ALJ and Appeals Council's findings are supported by substantial evidence. See Litvin, 2011 WL 4834138, at *8. "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). The court may remand the case if it finds that the ALJ's decision was not supported by substantial evidence. See Gadayeva v. Comm'r of Soc. Sec., No. 11-CV-2961 (BMC), 2012 WL 6212701, at *3 (E.D.N.Y. Dec. 13, 2012). However, "[t]he court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon a de novo review." Adams v. Astrue, No. 11-CV-289 (JFB), 2012 WL 768211, at *3 (E.D.N.Y. Mar. 9, 2012) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)). "Only the Commissioner's legal conclusion may be reviewed de novo without deference." Mesias v. Doe, No. 11-CV-2373 (RRM), 2012 WL 3704824, at *4 (E.D.N.Y. Aug. 24, 2012) (citing Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)).

"When a Federal court remands a case to the Commissioner for further consideration, the Appeals Council, acting on behalf of the Commissioner, may make a decision, or it may remand the case to an administrative law judge." 20 C.F.R. § 404.983. The Appeals Council may remand a case to the ALJ "in which additional evidence is needed or additional action by the administrative law judge is required." Id. § 404.977. On remand, "[a]ny issues relating to [the plaintiff's] claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in [the plaintiff's] case."[7] Id. § 404.983.

---

[7] Within this decision, pursuant to 20 C.F.R. § 404.983, the court will refer generally to the "Commissioner" when discussing remand instructions.

## B.    Waiver of Recovery of Overpayment

In cases of overpayment, "whenever the Commissioner of Social Security finds that more or less than the correct amount of the payment has been made to any person under [Title II], proper adjustment or recovery shall be made." 42 U.S.C. § 404(a)(1). There can be "no adjustment of payment to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." Id. § 404(b)(1). If the Commissioner finds that the claimant is not without fault, then "there is no need to consider whether recovery of the overpayments would defeat the purpose of Title II or would be against equity and good conscience." Langella v. Bush, 161 F. App'x 140, 142 (2d Cir. 2005). The Commissioner's decision whether "a claimant was not without fault is a factual determination that must be upheld if it is supported by substantial evidence in the record as a whole." Nieves v. Comm'r of Soc. Sec., No. 15-CV-4460 (RA) (GWG), 2016 WL 3791126, at *3 (S.D.N.Y. July 12, 2016) (quoting Howard v. Sec'y of Health & Human Servs., 741 F.2d 4, 8 (2d Cir. 1984)).

An overpaid individual is at fault if the incorrect payment resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507(a)-(c). Additionally, the Commissioner must take into account an individual's "physical, mental, educational, or linguistic limitation[s]." 42 U.S.C. § 404(b)(2). While preparing her case, "the overpaid person has the right to inspect and copy [the SSA's] records related to the overpayment . . . after [the SSA] receives notice from the overpaid person that inspection and copying are requested." 20 C.F.R. § 404.521(e). The claimant bears the

burden of proof to demonstrate that she is without fault and that repayment either would be inequitable or would defeat the purposes of the Social Security Act. See Adams, 2012 WL 768211, at *5 (citing Valente, 733 F.2d at 1042).

The determination of fault only applies to the individual, and the court does not consider any fault on behalf of the SSA. See 20 C.F.R. § 404.507. The Second Circuit has interpreted Section 404.507 liberally, "enabling the commissioner to recover overpayments with relative ease." Gadayeva, 2012 WL 6212701, at *2 (citing Barone v. Bowen, 869 F.2d 49, 51 (2d Cir. 1989)). No showing of bad faith on behalf of the claimant is required; "rather, an honest mistake may be enough" to constitute fault. Id. (quoting Center v. Schweiker, 704 F.2d 678, 680 (2d Cir. 1983)). However, a finding of fault with respect to one part of an overpayment does not result in a generalized finding of fault for every alleged month of the overpayment. See Howard, 741 F.2d at 8-9.

While fault determinations under Section 404.507 are interpreted liberally, an individual who relies "on erroneous information from an official source within the Social Security Administration . . . will be deemed to be without fault." 20 C.F.R. § 404.510a. When misinformation claims are raised, the credibility of the claimant becomes a "critical factor in determining whether [the claimant] is without fault . . . [and] the ALJ must also make an explicit determination regarding [the claimant's] credibility." Ming, 2009 WL 2495947, at *6 (citing Valente, 733 F.2d at 1045).

## C.    Admission of New Evidence

In Social Security appeals, the court must base its review "upon the pleadings and transcript of the record." 42 U.S.C. § 405(g). The court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that

there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Id. Thus, remand based on the need to review new evidence requires "(1) a showing that there is new and material evidence and (2) good cause for the failure to incorporate that evidence into the record in a prior proceeding." Skrodzki, 2013 WL 55800, at *4 (internal quotation marks omitted). New evidence is considered material if "(1) it is relevant to the claimant's condition during the time period for which benefits were denied, (2) it is probative, and (3) there is a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." Williams v. Comm'r of Soc. Sec., 236 F. App'x 641, 644 (2d Cir. 2007) (internal quotation marks omitted). "[A] claimant's pro se status can establish good cause for the purposes of remand." Skrodzki, 2013 WL 55800, at *5 (citing Jones v. Sullivan, 949 F.2d 57, 61 (2d Cir. 1991)).

## III.  DISCUSSION

Plaintiff argues that she is without fault with regard to the overpayment and owes "zero dollars." (R. at 353-54.) The ALJ found that: (1) "claimant was overpaid benefits in the amount of $36,351.70 between February 2001 and September 2005"; (2) "claimant was at fault in causing the overpayment [because] she accepted payments that she knew or she could have been expected to know were incorrect"; (3) "claimant is at fault in causing the overpayment, recovery of the overpayment is not waived"; and (4) "claimant is liable for repayment of the overpayment made to the claimant because of her earnings." (Id. at 97-98.) The Appeals Council revised the ALJ's date range for the overpayment to cover January 1998 through December 2006, and ruled that all of the ALJ's other "findings [were] well supported." (Id. at 14.) Since the Appeals Council found that all of the ALJ's findings, excluding the date range, were supported by

substantial evidence, the court will review the Appeals Council decision and the ALJ findings it adopted.

Plaintiff does not dispute that she received DIB payments while she was working. (See Pl.'s Aff. at 6-7.) However, Plaintiff argues that the Appeals Council and ALJ did not apply the correct legal standard and that their findings are not supported by substantial evidence. (See id. at 4-7, 9, 14.) Plaintiff also argues that the Appeals Council failed to review additional evidence which could have affected the Council's decision. (See id. at 13.) For the reasons set forth below, the court finds that: (1) by failing to consider Plaintiff's potential 20 C.F.R. § 404.510a misinformation claim, the ALJ and Appeals Council did not apply the correct legal standard; (2) the ALJ committed legal error when he failed to develop the Record by not including a material document presented to him at the October 18, 2011, hearing; and (3) the ALJ and Appeals Council's decisions regarding the overpayment dates and Plaintiff's credibility are not supported by substantial evidence.

### A.     Application of the Correct Legal Standards

#### 1.     Misinformation

Plaintiff argues that both the ALJ and the Appeals Council failed to apply the correct legal standards by failing to address her 20 C.F.R. § 404.510a misinformation claims. (See Pl.'s Aff. at 7.) The court agrees.

When a plaintiff informs the ALJ of a potential misinformation issue, the ALJ must address the validity of the claim. See Ming, 2009 WL 2495947, at *5 (explaining that after being alerted to the plaintiff's misinformation claim through her "Statement of Claimant or Other Person" form, the ALJ's silence on the misinformation claim was cause for remand). The ALJ fails to apply the correct legal standards when he neither discusses a plaintiff's misinformation

14

allegations during the hearing, nor addresses them in the written decision. See id. at *6;
Litvin, 2011 WL 4834138, at *8 (finding that the ALJ did not apply the correct legal standards
when he failed to address the plaintiff's misinformation claims).

Here, both the ALJ and Appeals Council failed to consider 20 C.F.R. § 404.510a. At the
ALJ hearing, and within her ALJ Hearing Request Form, Plaintiff stated that she was "told that
[work] would not affect my Social Security disability check in any way" and "the SSA personnel
advised me and gave me misinformation." (R. at 59, 357.) At the October 18, 2011, hearing,
Plaintiff elaborated that she spoke in person with individuals identified as Ms. Sompano, Mr.
Bailey, and Ms. Curti, and with the "1-800 service people" over the phone. (Id. at 349-50, 360.)
Along with these general misinformation claims, Plaintiff also specifically stated that she was
misinformed about her eligibility for a second TWP. (See Pl.'s Aff. at 7.) Regarding this second
TWP, Plaintiff provided the ALJ with a March 28, 2002, letter which she claims contained
misinformation from the SSA.[8] (See R. at 357, 374.) Because neither the ALJ nor the Appeals
Council considered Plaintiff's misinformation claims under 20 C.F.R. § 404.510a, they did not
apply the correct legal standard.

On remand, the Commissioner should review Plaintiff's general and specific TWP
misinformation claims. If the Commissioner finds that Plaintiff was misinformed, then she must
determine if the potential misinformation applies only to the TWPs, the reentitlement period, or
the entirety of the overpayment. Given that Plaintiff alerted the SSA in her March 15, 2002,
disability report that she worked from January 2001 through October 2001 after the conclusion
of her first TWP, the Commissioner should specifically consider whether the March 28, 2002,
and May 15, 2002, SSA letters contradict the SSA's retroactive finding that Plaintiff was no

---

[8] In addition to failing to address Plaintiff's misinformation claims regarding the March 28, 2002, letter, the ALJ
also failed to include the letter in the Record. (See infra Part III.A.2.)

longer disabled as of November 2000. (See Pl.'s Aff at 18, 22; R. at 27, 140.) If Plaintiff relied "on erroneous information from an official source," then she was not at fault in accepting the overpayments. 20 C.F.R. § 404.510a; see also Valente, 733 F.2d at 1044 (stating that if the plaintiff "relied on the erroneous recommendations of the SSA employees, [she] was not at fault in accepting the overpayments").

### 2. Failure to Include Documents Presented At Trial

Next, Plaintiff argues that the ALJ committed legal error by failing to include documents in the Record which she presented at the hearing. (See Pl.'s Aff. at 4.) After reviewing the hearing transcripts, the court finds that the Record is not sufficiently developed.

When an ALJ does not "fully develop[] the factual record, the ALJ commit[s] legal error." Rosa, 168 F.3d at 80. Due to the ALJ's affirmative duty to develop the record, he must take into consideration documents that are both relevant and available at the time of the hearing. See Howard, 2007 WL 4326788, at *5 (remanding because of the ALJ's failure to consider the plaintiff's impairment-related work expenses which "[were] relevant to the correct amount of the overpayment and [were] available at the time of the ALJ's hearing"). Furthermore, an ALJ fails to develop the record where he is presented with relevant documents at the hearing yet fails to include these documents in the record. See Yankus, 2008 WL 4190870, at *7. Under these circumstances, the case must be remanded for a complete and fair hearing, and the plaintiff must have "the opportunity to present any evidence she wishes [at the rehearing] in support of her application for waiver." Id. at *8.

At the October 18, 2011, hearing, Plaintiff proffered evidence regarding her TWPs which is not present in the Record. Plaintiff presented a March 28, 2002, letter from Mr. Bailey regarding her alleged second TWP. (See R. at 357.) The ALJ acknowledged that Plaintiff

16

"raised the question on whether [she] had a trial work period or whether [she] had two trial work periods," stating that "[t]his is something that I will have to look into. [And b]ased on that, I can determine what the proper amount [is] that you should have been paid." (Id. at 363.) Later in the transcript, the ALJ acknowledged receiving the letter, stating, "[t]here's a letter here from Mr. Bailey dated 3/28/02." (Id. at 374.) The transcript therefore indicates that the letter was both material to the overpayment amount and that the letter was available at the time of the ALJ hearing. Because the ALJ failed to include a document that was both relevant and available, the court finds that the Record is undeveloped, and remand is warranted.

Plaintiff also argues that the ALJ failed to include seven other documents which she claims were presented at the hearing and are absent from the Record. (See Pl.'s Aff. at 4, 16-23.) Unlike the March 28, 2002, letter, there is no indication that these documents were, in fact, presented at the hearing. Therefore, the court will consider this issue under the standard for admitting new evidence, rather than reviewing for legal error.

Pursuant to 42 U.S.C. § 405(g), the court may at any time "order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." The Second Circuit has held that new evidence is material if, "(1) it is relevant to the claimant's condition during the time period for which benefits were denied, (2) it is probative, and (3) there is a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." Williams, 236 F. App'x at 644 (internal quotation marks omitted). Additionally, a plaintiff's pro se status may excuse her failure to present relevant evidence at an ALJ hearing where the ALJ failed to make a reasonable effort to acquire the evidence. See Howard, 2007

17

WL 4326788, at *4 (stating that the ALJ's failure to sufficiently develop and consider the plaintiff's impairment-related work expenses, coupled with the plaintiff's pro se status, established good cause for considering additional evidence on remand); Skrodzki, 2013 WL 55800, at *5 (finding that "a claimant's pro se status can establish good cause for the purposes of remand"); Lopez v. Astrue, No. 09-CV-1678 (CBA), 2011 WL 6000550, at *12 (E.D.N.Y. Nov. 28, 2011).

The seven additional documents are all material because they: (1) are all relevant to the time period in dispute; (2) are probative to either the timeframe of the overpayment, the amount of the overpayment, or Plaintiff's credibility; and (3) given the undeveloped Record, there is a reasonable possibility that the new evidence would have influenced the ALJ to decide Plaintiff's claim differently. See Williams, 236 F. App'x at 644. Additionally, Plaintiff's pro se status and the ALJ's failure to make a reasonable effort to acquire the evidence establishes good cause for the previous failure to incorporate the evidence into the Record.

On remand, the Commissioner should review the March 28, 2002, letter, specifically focusing on its possible relevance to Plaintiff's misinformation claims and the effect a potential second TWP would have on the calculation of the overpayment amount. Furthermore, at the rehearing, Plaintiff should have the opportunity to introduce additional evidence, including the seven additional documents, which will assist in further developing the Record.

3.    Overpayment Amount

Plaintiff next argues that the ALJ failed to develop the Record with regard to the amount that she was overpaid. (See Pl.'s Aff. at 8.) The court agrees that the ALJ failed to sufficiently develop the Record, because he relied on an undated document despite evidence of conflicting overpayment amounts. See Howard, 2007 WL 4326788, at *4.

"[S]ome circuits have held that when a claimant challenges the SSA's initial determination of the amount that she was overpaid, the Commissioner must present substantial, [and] reliable evidence of the particular overpayments." Daviau v. Astrue, No. 09-CV-0870 (MAD), 2012 WL 13543, at *7 (N.D.N.Y. Jan. 4, 2012) (citing McCarthy v. Apfel, 221 F.3d 1119, 1126 (9th Cir. 2000)); see also Pennerman v. Apfel, No. 99-CV-3244 (JG), 2001 WL 527398, at *3 (E.D.N.Y. April 18, 2001) ("Although the Social Security Act does not indicate who bears the burden of establishing the fact of overpayment, the courts that have considered the issue have held, and I agree, that the Commissioner bears the burden of proving the fact and amount of overpayment."). This relates to the duty to develop the record, especially when the documents in the record contain conflicting overpayment amounts. See Daviau, 2012 WL 13543, at *7 (explaining that because multiple documents in the record indicated a range of possible overpayment amounts, the ALJ needed to further develop the record to provide direct support for the amount he chose).

Here, the ALJ and the Appeals Council found that Plaintiff was overpaid by $36,351.70, yet neither decision cites to any supporting evidence from the Record.[9] (See R. at 13, 97.) Moreover, Plaintiff stated at the October 18, 2011, hearing that she had already repaid a portion of the overpayment, which, if true, would lower the amount below $36,351.70. Additionally, the Record contains SSA letters sent between February 2, 2008, and September 12, 2011, in which Plaintiff's overpayment amount fluctuates between $29,760.80 and $35,928.00. (See id. at 22, 45, 55, 108, 114, 119.) While the September 12, 2011, Notice of Hearing lists the overpayment amount as $29,760.80, it appears the ALJ instead relied on Exhibit 15B, a table outlining overpayments, to guide his calculations. (See id. at 22, 353.) Exhibit 15B states an

---

[9] The Appeals Council overpayment calculation only cites to the ALJ's finding. (See id. at 13.)

overpayment of $36,351.70; however it does not indicate the date on which it was created and there is no indication that it post-dates the September 12, 2011, Notice of Hearing. (See id. at 87-91.) Without a date for Exhibit 15B, the court is unable to determine if the ALJ's calculated overpayment amount is supported by substantial evidence. Therefore, the case is remanded for the Commissioner to develop the Record regarding Plaintiff's potential repayment and provide evidentiary support, complete with dates, for her overpayment amount.

### B.    Substantial Evidence

Next, Plaintiff argues that that the ALJ's and Appeals Council's decisions regarding her credibility, the overpayment dates, and her 2005 income are not supported by substantial evidence. The court finds that: (1) the ALJ's failure to make a credibility finding leaves his determination of fault unsupported by substantial evidence; (2) the Appeals Council's 1998 start date for the overpayment is not supported by substantial evidence; and (3) due to the under-developed Record, the court need not reach the 2005 income issue at this time.

### 1.    Determination of Plaintiff's Credibility

Plaintiff argues that the ALJ's determination of fault is not supported by substantial evidence. (See Pl.'s Aff. at 12.) The court agrees.

"A proper evaluation of fault requires an assessment of the recipient's credibility." Gusky v. Astrue, 954 F. Supp. 2d 180, 191 (W.D.N.Y. 2013); see also Ming, 2009 WL 2495947, at *6 (stating that a claimant's credibility is a "critical factor in determining whether [the claimant] is without fault"). In cases where the plaintiff's credibility plays a vital role, the ALJ must make a specific credibility finding. See Valente 733 F.2d at 1045 (stating that without a credibility finding, the court is "at a loss to discern the ALJ's rationale for his determination that the [plaintiff was] at fault"). When the ALJ fails to make a credibility finding under these

circumstances, the court is unable to determine whether the ALJ's finding of fault is supported by substantial evidence, and the case must be remanded. See Yankus, 2008 WL 4190870, at *7.

Here, the ALJ found that Plaintiff "did not timely furnish information about her work activity." (R. at 97.) However, Plaintiff claims that she personally updated SSA representatives and the "1-800 service people" about her work activities, specifically naming Ms. Sompano, Mr. Bailey, and Ms. Curti. (See id. at 349-50, 360.) Because Plaintiff's testimony was the only evidence of these conversations, her credibility is squarely at issue; yet the ALJ did not make a credibility determination. Therefore, the court finds that the ALJ's finding of fault, as adopted by the Appeals Council, is not supported by substantial evidence. On remand, the Commissioner must make a specific finding regarding Plaintiff's credibility as to her claim that she timely reported her work activity.

Plaintiff also claims that the ALJ and Appeals Council did not consider her work-related expenses when determining her overpayment amount. (See Pl.'s Aff. at 9-10.) Plaintiff bases this argument on her claim that the SSA lost portions of her file which contain expenses that, if applied, would lower her earnings below SGA levels. (Id.) Because the only evidence in support of this claim is Plaintiff's own testimony, this issue also requires a credibility determination on remand.

### 2. Overpayment Dates

Plaintiff also argues that the January 1998 to December 2006 overpayment date range is not supported by substantial evidence. (See Pl.'s Aff. at 9.) The court agrees.

To be supported by substantial evidence, the Commissioner's finding must be reinforced by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran, 569 F.3d at 112 (internal quotation marks omitted). The court will remand

in cases where the ALJ or Appeals Council findings are based on evidence in the record that is "not very substantial." See Gadayeva, 2012 WL 6212701, at *6 (stating that evidence of the plaintiff's past employment as a teacher in the Soviet Union, and that she passed her citizenship test, was not substantial enough to sustain a finding that the plaintiff could understand the instructions on her disability application).

Here, the Appeals Council relied on evidence which directly contradicts its date findings. During its review, the Appeals Council found that the ALJ's February 2001 through September 2005 date range was not supported by substantial evidence. (R. at 13.) Referencing only Exhibit 14B, the Appeals Council stated that "the corresponding overpayment period is January 1998 to December 2006." (Id.) However, the Appeals Council referenced "the payment worksheets," which suggests that it intended to cite the Exhibit 15B worksheets, and not Exhibit 14B which contains only copies of Plaintiff's bills and her written responses to the ALJ during the November 21, 2011, hearing. (See id.) Within Exhibit 15B, there is no reported overpayment until February of 2001. (Id. at 89.) Additionally, Plaintiff was unemployed, determined disabled, and did not receive any income from February 1998 through January 2000. (See id. at 123.) Because the Appeals Council only cites Exhibit 15B in support of its date range, the court finds that a start date of January 1998 is not supported by substantial evidence, and the non-specific range of January 1998 to December 2006 overgeneralizes the overpayment period. Therefore, without more information regarding which months in the date range Plaintiff was overpaid the court cannot determine if the overpayment date range is supported by substantial evidence.

On remand, the Commissioner is instructed to determine the exact months that Plaintiff was overpaid.

3.    2005 Disputed Income

Finally, Plaintiff argues that her 2005 payments were not income and that the ALJ's findings regarding these payments were not supported by substantial evidence. (See Pl.'s Aff. at 8.) Due to the inadequately developed Record, the court need not reach this argument at this time.

However, the court notes that the disputed income is seven payments of $588.30 made to Plaintiff by AT&T, from January 2005 to July 2005. (See R. at 125.) At that time, the SGA income limit was $830.00 per month. (Id.) According to the SSA, from January 2005 to July 2005 Plaintiff's DIB was withheld because she was found no longer disabled, and not because she exceeded her SGA limit. (Id. at 39.) Should the Commissioner find on remand that Plaintiff's January 2005 to July 2005 disputed work activity is material to the overpayment, then the Commissioner must determine if the payments were income for work or another form of pay. If the payments were vacation pay as alleged in Plaintiff's Affidavit, these would be counted as wages. See 20 C.F.R. § 404.1044. However, any payments that are part of an employer plan or sick pay are not counted as wages. See 42 U.S.C. § 409(a)(2); 20 C.F.R. § 404.1049(b).

C.    Admission of New Evidence

Finally, Plaintiff argues that she timely submitted additional evidence to the Appeals Council, which the Appeals Council failed to consider in its review of the ALJ's decision. (See Compl. at 4.) Based upon the Certified Mail Receipt attached to the Complaint, it is clear that a document, or documents, were timely sent to the Appeals Council. (See id. at 14.) However, considering its resolution of Plaintiff's other arguments, the court need not reach this issue at this time. On remand, Plaintiff will have the opportunity to submit any additional evidence, including these documents, to assist in the development of the Record. See Yankus, 2008

23

WL 4190870, at *8 (finding that "the ALJ's failure to adequately develop the Administrative Record" as well as the ALJ not "consider[ing] all of the relevant factors (especially plaintiff's credibility)-warrants remand of this case for a complete and fair hearing, and at which the plaintiff shall have the opportunity to present any evidence she wishes in support of her application for waiver").

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings is DENIED, and this case is REMANDED to the Commissioner for further proceedings consistent with this Memorandum and Order.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      August 10, 2016

NICHOLAS G. GARAUFIS
United States District Judge